UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH S.,                                    Case No. 24-11883

                    Plaintiff,

v.                                               Curtis Ivy, Jr.
                                                 United States Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____/

**OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

Plaintiff Elizabeth S. brings this appeal pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner").  The Administrative Law Judge ("ALJ") issued a decision that

partially favored Plaintiff—she found Plaintiff disabled from November 19, 2019

(the alleged disability onset date) through January 25, 2021.  But the ALJ found

that her disability ended as of January 26, 2021, because of medical improvement.

According to the ALJ, as of that date, Plaintiff no longer needed to miss one day of

work per week for medical treatment, so her improvement rendered her capable of

working full time.  Plaintiff challenges this conclusion.

This matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 15), and the administrative record (ECF No. 4).

For the reasons below, Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's motion for summary judgment is **GRANTED**, and the administrative decision is **AFFIRMED**.

## I.    DISCUSSION

### A.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In

deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

"[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B.    Framework for Disability Determinations

Only the ALJ's decision that Plaintiff medically improved is under consideration.  When a benefits recipient challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point that she is able to perform substantial gainful activity.  42 U.S.C. § 423(f)(1).  Whether an individual is entitled to continued benefits depends on whether "there

has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. § 404.1594(b).

"Medical improvement" is "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Kennedy v. Astrue*, 247 F. App'x 761, 764-65 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s)." 20 C.F.R. § 404.1594(b)(1)(i). Medical improvement relates to the individual's ability to work "only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities.'" *Kennedy,* 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)).

## C.    Analysis

Plaintiff alleged that her disability began on November 21, 2019, because of several ailments. The ailments included: breast cancer, complex regional pain syndrome ("CRPS") right lower side, neuropathy in hands and feet, fibromyalgia, fatigue, cognitive memory loss, focusing issues, depression, and anxiety. (ECF No. 4-1, PageID.38, 244). On July 6, 2023, the ALJ issued an opinion which

determined that Plaintiff had a period of disability that ended on January 25, 2021. (*Id.* at PageID.50).

Plaintiff stopped working in 2019 because she fell and tore a tendon in her ankle. She had surgery to repair her ankle that year. She was diagnosed with breast cancer in March 2020. She underwent a series of chemotherapy and had mastectomy and reconstruction surgeries at the end of 2020. (*Id.* at PageID.39). The ALJ found that the "overall evidence, including medical evidence documenting extensive treatment for breast cancer, a torn ankle tendon, CRPS, degenerative disc disease, anxiety and depression supports the need to be off work more than 1 day per week" during the disability period for treatment and symptoms. (*Id.*) (cleaned up). Thus, the ALJ concluded that Plaintiff was disabled through January 25, 2021. This conclusion hinged on the inclusion of the limitation that Plaintiff would need to be absent from work at least one day per week for medical treatment or recovery from treatment. That many absences is work-preclusive.

From January 26, 2021, onward, Plaintiff had no new impairments. (*Id.* at PageID.41). According to the ALJ, as of that date Plaintiff had medically improved. Treatment records from early 2021 revealed no evidence of breast cancer. Indeed, Plaintiff's surgeon said she could resume normal activities except for pectoralis-intense activities. A January 2021 record recorded no focal deficits,

no joint swelling, and no edema, cyanosis, or clubbing in the extremities.
Psychiatric findings were normal, too.  Lastly, the ALJ noted that orthopedic notes
indicated that Plaintiff was doing very well after her ankle surgery.  (*Id.* at
PageID.44).  Given these improvements, the ALJ removed the limitation that
Plaintiff would need to be absent one day per week for treatment or recovery from
treatment and found her not disabled.

Plaintiff argues that the ALJ did not explain how she reached her conclusion.
Plaintiff insists that the ALJ's conclusion is wrong because, though she was
cancer-free by January 26, 2021, her other impairments still existed and required
extensive medical treatment.  She says the ALJ needed to compare all the evidence
of impairments during the disability period with the evidence of impairments after
the disability period.  (ECF No. 13, PageID.2808, 2811).  Had the ALJ done this
comparison, she contends that "there is no appreciable change in the amount and
duration of her need for medical treatment and her symptoms."  (*Id.* at
PageID.2813).  To support the need for extensive medical treatment, Plaintiff
points to three appointments with her oncologist throughout 2021, having
medication dosage increased, undergoing five procedures for vein insufficiency,
and receiving mental health therapy.  She says her other impairments required a
"tremendous amount of medical treatment."  (*Id.* at PageID.2814-15).  Her last
argument is that the ALJ's decision is internally inconsistent.  In finding Plaintiff

disabled for a closed period because of missing work, the ALJ cited evidence occurring after the disability period.  And the ALJ did not limit the need to miss work to Plaintiff's cancer treatment; instead, the ALJ mentioned "multiple impairments."  (*Id.* at PageID.2816-17).

The Court finds both that the ALJ adequately explained her decision and that the decision is supported by substantial evidence.

Plaintiff's contentions that she required just as much treatment after her cancer was resolved is unsupported.  The first bit of evidence she cites are five medical records from 2021 showing that at one appointment she reports doing well but at the next she reports not feeling well, and the physician increased her medication.  (ECF No. 13, PageID.2812) (citing ECF 4-2, PageID.1981, 1974, 1933, 1928, 1897).  For example, on October 10, 2021, Plaintiff reported feeling more anxiety and depression in recent days.  (ECF No. 4-2, PageID.1928).  These five records do not support a need to be absent at least one day per week for medical treatment.  For one thing, Plaintiff's mental health complaints and treatment with medication do not equate to a need to be absent once a week for treatment.  For another, it appears that these five records are from online telehealth visits with an on-demand doctor because the name of the "office" is "dr+ on demand" with its office in Minnesota and the notes show that Plaintiff consented to "telemedicine."  If these were online, on-demand visits, then the argument that she

required treatment that would keep her from working full-time is on shaky

ground—on-demand doctor visits could occur before or after work, during a lunch

break, or on the weekends.

Next, Plaintiff says she attended 42 office visits from January 26, 2021, to

May 31, 2023, but as the Commissioner noted, she did not cite records to confirm

42 visits.  (*See* ECF No. 13, PageID.2812).  The Court will not review hundreds of

pages of records to confirm 42 office visits.  Even if Plaintiff had 42 visits with

medical professionals during that period, the Court does not view those visits as

being at odds with the ALJ's decision.  Among the 42 visits are five surgical vein

ablation procedures and a few physical therapy visits.  The five procedures

occurred between March 14 and 24, 2022.  (ECF No. 4-3, PageID.2423-24, 2426-

28, 2430-32, 2434-36, 2438-41).  It does not appear she required additional office

follow-up from these procedures.  Five procedures in 10 days does not show that

Plaintiff required such extensive treatment that she would need to be absent from

work at least one day per week for treatment and recovery from treatment.

Plaintiff attended seven physical therapy sessions from November 17 to December

15, 2021.  (*Id.* at PageID.2287-98).  Though these sessions may have occurred

during usual business hours, Plaintiff "has not established any reason to think that

[s]he is unable to attend physical therapy sessions after work, on the weekends,

during lunch, or on some other schedule." *Pryor v. Comm'r of Soc. Sec.*, 2015 WL

12683977, at *7 (E.D. Mich. Aug. 21, 2015).  Additionally, Plaintiff presumably counts her telemedicine visits which are not "office" visits; it appears these could occur at times that do not conflict with a work schedule.  In short, Plaintiff has not persuaded the Court that her 42 visits in almost two years means that her impairments prevented her from engaging in full-time work.

Underscoring all of this is that none of Plaintiff's remaining impairments required the same level of treatment and frequency of treatment as her breast cancer and ankle injury did during the disability period.  Once cancer treatment was removed from Plaintiff's schedule, her medical needs were greatly diminished.

The ALJ made the requisite comparison of evidence in the decision— Plaintiff had breast cancer and related serious treatment and an ankle injury and surgery, but then Plaintiff was cancer free and her ankle was doing well as of January 26, 2021.  This is a comparison of medical evidence during and after the disability period.  Because Plaintiff beat cancer and because her ankle was doing well, the Court easily traces the ALJ's reasoning to her conclusion that Plaintiff no longer needed to be absent from work at least once per week for treatment or recovery from treatment.

That not all of Plaintiff's impairments changed as of January 26, 2021, does not require a different result.  Notably, the ALJ did not say or suggest that Plaintiff's other impairments disappeared.  Rather, implicit in the ALJ's conclusion

9

is that the remaining impairments—e.g., CRPS, depression, and anxiety—did not require treatment or recovery from treatment that would have Plaintiff miss work multiple days per month.  That conclusion, as shown above, is supported by substantial evidence.

Plaintiff's final argument that the ALJ decision is internally inconsistent is not well taken.  Plaintiff uses one sentence from the ALJ's decision to support her argument.  That sentence is one of two in a paragraph in which the ALJ finds a medical opinion "not persuasive."  (ECF No. 4-1, PageID.40).  The medical opinion stated that Plaintiff could perform a range of light work.  The ALJ disagreed because of inconsistency "with the overall evidence of record *during the period of disability*."  (*Id.*) (emphasis added).  The next sentence is the one Plaintiff cites: "Evidence shows the claimant experienced symptoms from multiple impairments and required significant, ongoing treatment, for these impairments that supported the need to be absent at least 1 day per week."  (*Id.*).  The ALJ cited Plaintiff's hearing testimony and medical records, some of which from the non-disability period.  According to Plaintiff, the ALJ both failed to distinguish cancer treatment from treatment for other conditions and cited post-disability records, all of which apparently shows internal inconsistency with the conclusion that Plaintiff no longer required extensive treatment as of January 26, 2021.  (ECF No. 13, PageID.2816-17).

The argument is not well-taken for several reasons.  First is the fact that, reading the sentences together in the paragraph, it is clear the ALJ is referring to "significant, ongoing treatment" during the disability period, not after.  And this was said in the ALJ's assessment of medical evidence rather than a conclusion about the evidence as a whole.  Lastly, the Court does not view the ALJ's supporting citations to impact the meaning of the decision.  Only one of the medical records is exclusively from the post-disability period.  That record is a follow-up with the oncologist.  It is likely that the ALJ cited this single record because it provides a history of Plaintiff's cancer diagnosis and treatment supportive of the notion that Plaintiff required extensive treatment for a time. (ECF No. 4-2, PageID.2002-04).  The record does not establish continuing cancer treatment after January 26th as it was merely a follow-up appointment.  The rest of the cited records include documents from the disability period, so it cannot be said that the ALJ relied on post-disability period records to support disability only before January 26, 2021.  (*See* ECF No. 13, PageID.2817; ECF No. 15, PageID.2843).  The same is true about the citation to Plaintiff's hearing testimony. The ALJ acknowledged that Plaintiff "had a lot going on during" the time she was being treated for breast cancer.  (ECF No. 4-1, PageID.71).  The rest of the testimony concerned Plaintiff's impairments and symptoms; the parties did not discuss frequency, duration, and severity of appointments.  (*Id.* at PageID.71-81).

As evidenced in the residual functional capacity finding, the ALJ recognized that Plaintiff's impairments reduce her ability to do engage in work-related activities.  The ALJ's conclusion, however, that Plaintiff's impairments, or the treatment for those impairments, would not require her to miss at least one day per week is supported by substantial evidence.  As such, the ALJ's decision is affirmed.

### F.      Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's motion for summary judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

Date: September 3, 2025                  s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge